IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Patricia J. White,                    :

          Plaintiff,                   :     Case No. 2:08-cv-1082

     v.                                :     MAGISTRATE JUDGE KEMP

Worthington Industries, Inc.          :
Long Term Disability Income
Plan, et al.,                          :

          Defendants.                  :


OPINION AND ORDER

This case was filed under the provisions of ERISA which
allow a participant in or beneficiary of an employer-sponsored
disability plan to seek judicial review of a denial of a claim
for benefits under that plan.  See 29 U.S.C. §1132(a)(1)(B).  It
has been referred to the Magistrate Judge for disposition
pursuant to the consent of the parties and through the authority
found in 28 U.S.C. §636(c).  The administrative record has been
filed, and both parties have briefed the question of whether Ms.
White is entitled to relief.  A motion to seal the administrative
record and a motion to dismiss count III of the amended complaint
have also been filed.  For the following reasons, the Court will
direct the entry of judgment in favor of the defendants.

I.  The Motion to Dismiss

In her amended complaint, Ms. White has pleaded three claims
for relief.  Counts I and II are ERISA-based claims for benefits
and equitable relief.  Count III alleges that defendants
Worthington Industries and Unum Life Insurance Company of America
breached a multi-state settlement agreement under which they had
agreed to reassess her benefits claim in 2005.  In their motion
to dismiss, defendants (who refer to themselves collectively as

Unum) argue that this claim, which is styled as a claim arising under federal contract law, is actually a state-law breach of contract claim that is pre-empted by ERISA. Alternatively, they argue that this count of the complaint does not state a claim upon which relief can be granted. For the following reasons, the Court agrees that this claim is subject to dismissal.

As also described below, more than a year after Unum upheld its discontinuation of Ms. White's long-term disability benefits, it offered her the opportunity to participate in a reassessment procedure. That opportunity arose as the result of Unum's assent to a Regulatory Settlement Agreement which required it to afford such rights to a class of claimants whose benefit claims had previously been denied or whose receipt of benefits had been discontinued. Ms. White was a member of that class and therefore entitled to have her claim reassessed. She completed the necessary forms for that process, but was advised on December 13, 2006, that the decision terminating her benefits would not be altered.

Ms. White's claim for breach of the Agreement, which, she asserts, arises under federal contract law, contains three separate allegations of contractual violations. She contends that Unum breached the contract by "failing to provide White with a full and fair review of her claim," by "failing to reinstate White's benefits," and by requiring her "to waive certain rights as a condition precedent to reassessing her claim, even though no such waiver was required by, or agreed to, in the ... agreement." Amended Complaint, Doc. #25, ¶s 41-43. She does not specifically identify in any of her filings what rights she was allegedly required to waive or how that might have caused damage, so the Court will not consider that allegation. The other allegations relate to the way in which Dr. Krell, the physician who did the reassessment of her claim, evaluated such things as the opinions

-2-

of her treating physicians (or failed to correct the improper evaluation of those opinions during the earlier claim review process), failed to contact her physicians, and relied selectively on information favoring Unum to the exclusion of information which favored Ms. White.  <u>See</u> Plaintiff's Motion for Judgment on the Administrative Record, Doc. #37, at 16-20.  The remedy she seeks for these alleged breaches is the reinstatement of her benefits and an award of past due benefits.  The question is whether this type of breach of contract claim can be maintained apart from ERISA, either because it is a preempted state law claim, or because it would be inappropriate to imply a federal common-law remedy here.

There are surprisingly few decisions dealing with either of these issues.  Two courts have held, without a substantial amount of analysis, that any claims arising under this type of agreement are state law claims and, as such, are preempted by ERISA.  <u>See Johnson v. Unum Provident</u>, 2009 WL 5126546 (11th Cir. December 30, 2009); <u>Goldberg v. Unum Provident Ins. Co. of America</u>, 527 F.Supp. 2d 164 (D. Me. 2007).  Another court has suggested that whether claims brought under such an agreement (which the court apparently believed to be state law claims) are preempted may depend on the type of relief sought, and whether that relief is truly independent of any claim available under ERISA.  <u>See Cherochak v. Unum Life Ins. Co. of America</u>, 586 F.Supp. 2d 522, 536-37 (D.S.C. 2008).  Another court, perhaps for similar reasons, has held that a claim that such an agreement was breached by the insurer's refusal to provide the reassessment process to the plaintiff was a state-law claim not preempted by ERISA.  <u>MacLennan v. Provident Life & Acc. Ins. Co.</u>, __ F.Supp. 2d __, 2009 WL 5064472 (D. Conn. December 15, 2009).  Finally, one court has held, in the context of a motion for leave to amend, and without considering the preemption question, that a

claim for breach of the agreement was cognizable as a state law claim under Arkansas law. <u>Jones v. Unum Life Ins. Co. of America</u>, 2006 WL 3462130 (E.D. Ark. November 29, 2006). There do not appear to be any decisions holding that the Regulatory Settlement Agreement involved in this case, or any similar agreement, creates rights which are enforceable under federal common law.

If the Court were to construe the agreement as creating rights enforceable only under state law, there would appear to be little dispute that the claim presented by Ms. White would be preempted by ERISA. The scope of ERISA preemption of state law is broad, and encompasses almost any state law claim that relates to an ERISA plan. <u>See Cromwell v. Accoucheur-Equitable H.A. Corp.</u>, 944 F.2d 1272, 1276 (6th Cir. 1991) ("only those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted"). Her claims, like the ones deemed preempted in <u>Goldberg</u>, go to the heart of her ERISA claim, and the relief she requests for the alleged breaches of the agreement includes an award of past and future benefits from an ERISA plan. Consequently, if the claims she asserts are state law claims, they are preempted.

Ms. White argues strenuously, however, that her contract-based claims are not state law claims but claims arising under federal law. It is true that the federal courts have the power to imply federal common law causes of action under some circumstances. Because of the limited role of the federal courts in determining what causes of action may be maintained under federal common law, however, the courts must be very circumspect when doing so. <u>See Masson Theatrical, Inc. v. Federal Express Corp.</u>, 89 F.3d 1244 (6th Cir. 1996). The courts may have more leeway in using federal common law rules within the context of state-created causes of action, but that does not convert such

claims into federal law causes of action. Id.

However, ERISA is one area where the Congressional intent to apply a uniform body of federal law to claims relating to ERISA plans is so strong that claims otherwise maintainable under state law, including contract claims, may be transformed into federal law claims to be decided under federal common law. See, e.g. Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund, 794 F.2d 221 (6th Cir. 1986). In that case, the court did not dismiss the plaintiff's claims based on two written instruments (a trust agreement and a collective bargaining agreement) because they were preempted by ERISA, but rather held that these contract claims arose under federal law. It thus reversed the district court's dismissal of those claims for lack of jurisdiction. It did so, however, in the context of its holding that there was neither an express nor implied cause of action under ERISA which would allow the plaintiff to seek relief on the claim asserted under the contract, which was for the refund of pension contributions mistakenly paid by an employer to an ERISA plan.

The possibility that ERISA preemption may provide the basis for a federally-based claim arising out of the Regulatory Settlement Agreement does not mean, however, that the Court should recognize that claim as being independent of Ms. White's remedies under ERISA. Whitworth Bros. created a common law cause of action in favor of the employer only because there was no remedy available to that party under ERISA. In Tassinare v. American Nat. Ins. Co., 32 F.3d 220 (6th Cir. 1994), the Court of Appeals declined to create a federal common law remedy under ERISA in favor of certain insurance agents who asserted that their employer had breached a duty to contribute certain monetary amounts to their retirement plans. The agents had also asserted a claim directly under ERISA, but it was dismissed on limitations

grounds.  The court noted, quoting the Supreme Court's decision
in Milwaukee v. Illinois, 451 U.S. 304, 314 (1981), that
"[c]reation of a cause of action under federal common law is only
'resorted to in absence of an applicable Act of Congress, and
because the Court is compelled to consider federal questions
which cannot be answered from federal statutes alone.'"
Tassinare, 32 F.3d at 225.  There, the absence of a viable cause
of action for the agents' claims was not the result of some gap
in ERISA - they possessed a breach of fiduciary duty claim under
29 U.S.C. §1132(a)(3) - but rather "result[ed] solely from the
agents' delay in seeking relief."  Id.  Therefore, the court
declined to create a new federal common law claim for them to
pursue.

     That rationale applies with equal force in this case.  If
Ms. White's claim is actually a state law claim for benefits
under ERISA, even if couched in terms of a breach of a state law
contract, the effect of ERISA preemption would be to convert that
claim to a claim under §1132(a)(1)(B).  See Pilot Life Ins. Co.
v. Dedeaux, 481 U.S. 41 (1987); Ruble v. UNUM Life Ins. Co. of
America, 913 F.2d 295 (6th Cir. 1990).  As the Court holds in the
next section of this Opinion, however, Ms. White's §1132(a)(1)(B)
claim is time-barred.  And she does not need a separate federal
common law claim to assert that Unum's decision to deny her
benefits claim was not properly made, regardless of whether the
improprieties she identifies occurred in the initial phase of the
claims process or in the reassessment procedure.  All of those
arguments could have been asserted in the context of the benefits
claim made available to her directly under ERISA.  It would be an
odd result indeed to hold that all aspects of the claims review
process would be reviewable by this Court in the context of a
timely-filed claim under §1132(a)(1)(B), that such a claim was
not timely filed, but that Ms. White could still obtain judicial

review of this exact claim under the guise of a federal common law breach of contract claim. As the Court's discussion below also indicates, by the time the reassessment process was completed, there was still time remaining in the limitations period for Ms. White to file §1132(a)(1)(B) claim. Under these circumstances, the Court concludes that she has no federal common law contract claim which would encompass the specific contractual breaches identified in her motion for judgment on the administrative record.

Ms. White attempts to avoid this result by arguing that there is no provision in ERISA that allows participants to sue for breach of a settlement agreement, but that the federal courts have recognized such a claim. Generally, federal courts do not have jurisdiction to enforce settlement agreements reached during the course of federal court litigation, even if the underlying cause of action is one created by federal law. See Griswold v. Potter, 2003 WL 23941714 (W.D. Mich. October 15, 2003). That principle has been applied to settlements of ERISA-based claims. See Painters Dist. Council No. 30, Health and Welfare Fund v. Maynard, 1985 WL 619 (N.D. Ill. April 11, 1985). To the extent that there are contrary holdings, for example, Board of Trustees of Hotel and Restaurant Employees Local 25 v. Madison Hotel, 97 F.3d 1479 (D.C. Cir. 1996), such cases involve enforcement actions which required the court to construe and apply provisions of an ERISA plan in addition to construing and applying the language of the settlement agreement itself. See Shaffer v. Veneman, 325 F.3d 370 (D.C. Cir. 2003). If that is the basis of Ms. White's argument here, it re-creates the problem that the type of enforcement she seeks is identical to her claim under §1132(a)(1)(B). Thus, her argument that "there is no statutory remedy for breach of an ERISA settlement agreement" is simply inaccurate in the context of the breaches she alleges, and forms

no basis for saving this claim from dismissal.

## II. The Disability Benefits Claim

### A. The Procedural Background

Because Ms. White's claim for disability benefits pursuant to the terms of the plan is an appeal from an administrative determination, the record upon which this Court must make its decision is the same as the record which was before the plan administrator. See Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir. 1998). Consequently, the facts which would be pertinent to the Court's decision on the merits are those which are established in that record. The record (which the Court will, at the conclusion of this order, be unsealed) is designated by Bates numbers preceded by certain letters (such as UACL), and it will be referred to in that fashion. Before the Court can reach the merits of the benefits claim, however, it will summarize the procedural background of the case, because the first argument that Unum raises in response to Ms. White's §1132(a)(1)(B) claim is that it is time-barred.

The following procedural facts are taken from the record or the parties' memoranda and are not disputed. Ms. White began working for Worthington Industries in May of 2001. She was employed as a Help Desk Analyst. Two months later, in July, 2001, she stopped working due to health reasons. She suffers from optic neuritis or neuroretinitis, sarcoidosis, and myasthenia gravis, all of which affect her vision.

Ms. White applied for and was granted long-term disability benefits beginning in 2002. However, in a letter dated February 27, 2003, she was notified that she no longer met the plan's requirements for long-term disability and would not be paid benefits beyond February 28, 2003. As was her right, she appealed that adverse decision administratively, but in a letter dated October 7, 2003 her appeal was denied.

Over the next year and three months, nothing of significance to the outcome of this case occurred. Then, by way of a letter dated January 19, 2005, Ms. White was notified that she could have her claim reassessed based on an agreement which had been reached between the United States Department of Labor and certain insurance regulators. She decided to participate in that process. However, she was notified in a letter dated December 13, 2006 that the decision terminating her benefits would not be changed. She filed this action on November 14, 2008 challenging the decision to discontinue her disability benefits as of February 28, 2003.

B.  <u>The Timeliness Issue</u>

1.  <u>The Parties' Arguments</u>

First, the Court will describe the parties' arguments about whether this case was filed too late. As will be seen, the Court will analyze the question somewhat differently than the way in which the parties have presented it. However, it is important to start the analysis by setting forth the reasons why each party believes that the case either was, or was not, filed within the time allowed for doing so.

a.  <u>Unum's Position</u>

Unum's argument that Ms. White's claim under §1132(a)(1)(B) is time-barred is fairly straightforward. As described in more detail below, the plan contains a three-year statute of limitations for bringing an action for judicial review. Ms. White's initial claim was (after being granted initially) finally denied no later than October 7, 2003. Unum asserts that the three-year limitations period began to run no later than that date. Had nothing else intervened, she should have filed this case by October 7, 2006.

As noted above, on January 19, 2005, Ms. White was advised that she was eligible to participate in a reassessment process.

-9-

Unum recognizes that the running of the statute of limitations may have been tolled pursuant to provisions of the Regulatory Settlement Agreement while that process took place. According to Unum, the reassessment process began on January 23, 2005, when Ms. White received her letter about it, although Ms. White did not actually submit the forms required for reassessment until July 26, 2006. Giving her the benefit of the earlier date, the running of the statute of limitation was tolled from January 23, 2005 until December 13, 2006, when Ms. White was told that her benefits would not be reinstated. That is a period of one year and 325 days. The total time which elapsed between the October 7, 2003 claim denial and the filing of this lawsuit on November 14, 2008 is five years and thirty-eight days. The difference between these two time periods is three years and seventy-eight days. Under this calculation, the case was filed seventy-eight days after the limitations period expired.

b. <u>Ms. White's Position</u>

Ms. White makes several responses to Unum's limitations argument. First, she argues that the plan does not really contain a three-year limitations period. By its language, the plan requires her to file suit within three years "unless otherwise provided for under federal law." The federal courts have held when an ERISA benefits plan contains no time limit for filing suit, the courts must apply the most analogous state statute of limitations. In Ohio, the limitations period for filing suit on a written contract is fifteen years. O.R.C. §2305.06. The Court of Appeals held in <u>Meade v. Pension Appeals & Review Committee</u>, 966 F.2d 190, 195 (6th Cir. 1992) that this is the most analogous Ohio statute of limitations for claims under §1132(a)(1)(B). Putting all of these principles together, Ms. White contends that federal law - which, in this particular circumstance, borrows the limitations period from state law -

does "otherwise provide" for an action under the plan to be filed more than three years after the operative events described in the plan's limitations period. Consequently, this case was filed well within the applicable limitations period.

Alternatively, she contends that the statute of limitations never began to run in this case. She bases that argument on the fact that, under the plan, the triggering event for calculating the limitations period is the time when she was required to submit a "proof of claim." She does not believe, however, that Unum ever required her to submit anything that could legitimately be described as a "proof of claim." If that is so, the limitations period contained in the plan never began to run.

In connection with this argument, Ms. White points out that several courts have held that a different analysis applies when the decision under review is not the initial denial of benefits, but a later termination of benefits. As she reads these cases, the language contained in this plan's limitations provision about when the time begins to run simply does not apply to cases where benefits have been granted and then discontinued. If that is so, one of two things would be true: either the time for filing suit has not yet begun to run, or the Court must apply the borrowed state statute of limitations. Either way, this case would have been timely filed.

2. <u>Legal Analysis</u>

a. <u>The Plan Language and the Key Communications</u>

As will be seen, no case involving a contractual limitations period - especially one which says that the time for filing suit begins to run only after some type of action has been taken under the plan - can be fairly evaluated without reference to the precise contractual language in question and to the events which might have been the triggers for the limitations period to start running. For this reason, all of those things will be recited in

detail.

    <u>The Limitations Provision</u>.  The Court has already quoted some of the plan language which establishes the limitations period.  It can be found (among other places) at page UACL 00023 and it reads in full as follows:

    WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

    You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years after proof of claim is required, unless otherwise provided under federal law.

    <u>The Proof of Claim Provisions</u>.  The proof of claim provisions are found on a page of the plan (UACL 00030) entitled "CLAIM INFORMATION."  The three pertinent headings on that page are: "WHEN DO YOU NOTIFY UNUM OF A CLAIM?"; "HOW DO YOU FILE A CLAIM?"; and "WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?".

    The first provision ("WHEN DO YOU NOTIFY UNUM OF A CLAIM?") states that "Written notice of a claim should be sent within 30 days after the date your disability begins," and that a participant claiming disability benefits "must send Unum written proof of your claim no later than 90 days after your elimination period."  It advises participants that there is a claim form available from Unum but that a participant may "send Unum written proof of claim without waiting for the form."

    The second provision ("HOW DO YOU FILE A CLAIM?") advises participants that "You and your Employer must fill out your own sections of the claim form and then give it to your attending physician.  Your physician should fill out his or her section of the form and send it directly to Unum."

    The third provision (""WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?") is introduced by this language: "Your proof of claim must show," followed by eight separate categories of information having to do with either the medical basis for the

claim or the dollar amount.  This section also states that "We may request that you send proof of continuing disability indicating that you are under the regular care of a physician" and that "This proof must be received within 30 days of a request by us."  Finally, it says that "In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim."

The February 27, 2003 Letter.  This is the letter which advised Ms. White that her benefits were being terminated.  This letter was preceded by a letter dated December 2, 2002, which told Ms. White, "At this time, we need updated certification of your continued disability."  She was asked to complete a medical supplemental statement on a form enclosed with the letter, and to do so by January 2, 2003.  (UACL 00414).

The portions of the February 27, 2003 letter (UACL 00411-00409) which may be relevant to the limitations issue, are as follows.  First, Ms. White was advised that her benefits were being terminated because Unum had determined that she had the capacity to perform the material duties of her occupation and that she would not be paid benefits beyond February 28, 2003.  Second, she was told by the writer that "[i]f you have additional information to support your request for disability benefits, it must be sent to my attention for further review ... within 180 days of the date you receive this letter."  She was given an address to which she "should submit your written appeal ...."  Finally, she was told that if her appeal were denied, the notice of decision contain, among other things, "a statement describing your right to bring a civil action under federal law.

The October 7, 2003 Letter.  This letter (UACL 00590-00593) affirmed the earlier decision to discontinue benefits and explained why.  With regard to legal action, it stated that "you have a right to bring a civil suit under section 502(a) of the

-13-

Employee Retirement Income Security Act of 1974."  It made no
mention of the time limit for doing so.

> b.  <u>The Questions Presented for Decision</u>

It is helpful to frame the analysis by asking a series of
questions.  These are the questions that other courts faced with
similar issues have thought important.  Here, the three key
questions are:

1.  Are contractually-based limitations periods allowed
under ERISA?

2.  If they are allowed, may they prescribe not only the
time limit for filing suit, but the date on which that time
period begins to run - in other words, may they determine when a
claim for benefits under the plan accrues?

3.  If the answer to each of the first two questions is yes,
so that the Court must use the plan provisions (rather than
principles borrowed from state law or created by federal common
law) to determine when the claim accrues and when the limitations
period has run, how do those provisions apply to the facts of
this case?

In this judicial circuit, the first two questions can be
answered fairly easily.  It is the last question that poses more
difficulty because there is no precedent in this circuit which is
precisely on point, and because the cases from other
jurisdictions are severely split on how to analyze and resolve
this issue.

> c. <u>Can the Plan Prescribe a Limitations Period?</u>

ERISA does not contain a statute of limitations for claims
brought under §1132(a)(1)(B).  In the absence of any language in
the plan prescribing a limitations period, courts must borrow the
most analogous state statute of limitations.  <u>Meade v. Pension
Appeals & Review Committee</u>, 966 F.2d 190, 195 (6th Cir. 1992).
However, if the plan does contain a provision governing when suit

may be filed, the Court is required to give effect to that provision so long as the time allowed for filing suit is reasonable. Morrison v. Marsh & McLennan Companies, 439 F.3d 295 (6th Cir. 2006). Morrison upheld a three-year contractual limitations period as reasonable, and other courts have done likewise. See, e.g., Doe v. Blue Cross & Blue Shield, 112 F.3d 869 (7th Cir. 1997). The limitations period in Ms. White's plan allows participants whose benefit claims are denied to file suit within three years. Therefore, under the controlling case law in this circuit, the Court is required to enforce this contractual limitation on the length of time for filing legal action to contest a denial or termination of benefits if it provides claimants with a reasonable period of time within which to file suit.

      d.  <u>Can the Plan Specify When a Claim Accrues?</u>

Many federal courts have held that, even if an ERISA plan may lawfully prescribe the length of the limitations period, it does not necessarily follow that the plan may also determine when a §1132(a)(1)(B) claim accrues. For example, in the Eighth Circuit, even when the court adopts a plan's limitations period, it apparently applies a different accrual rule to determine when that period begins to run. See Wilkins v. Hartford Life & Acc. Ins. Co., 299 F.3d 945 (8th Cir. 2002).

Although the Wilkins case does not contain much in the way of a rationale for its holding, in White v. Sun Life Assurance Co. of Canada, 488 F.3d 240 (4th Cir. 2007) the Court of Appeals for the Fourth Circuit rejected an accrual provision similar to the one contained in Ms. White's plan because it would create limitations periods of varying length, depending on when the participant finally exhausted administrative remedies. Further, in order to enforce such a provision, courts would have to examine, in each case, whether the time remaining in the

limitations period after exhaustion of administrative remedies
(which is a legal prerequisite to bringing a legal action under
§1132(a)(1)(B)) is reasonable.  The Court of Appeals thought that
this kind of case-by-case approach was inconsistent with ERISA's
mandate that an ERISA plan contain clear written rules that give
fair notice to plan participants of their rights under the plan.
Consequently, it refused to give effect to this type of plan
provision.

However, the Sixth Circuit Court of Appeals does not follow
this line of cases.  <u>Rice v. Jefferson Pilot Financial Co.</u>, 578
F.3d 450 (6th Cir. 2009), speaks directly to the question of how
these types of plan provisions are construed.  In that case, the
plan provided that "No legal action may be brought more than
three years after written proof of claim is required to be
given."  <u>See Rice</u>, 578 F.3d at 453.  The plaintiff filed his
claim in October, 2002, and received a series of denials, the
last of which was issued on September 24, 2003.  He filed suit
initially in November, 2003, but that case was dismissed while
further administrative proceedings were conducted.  The
plaintiff's claim was again denied on April 20, 2005, and he
filed a new complaint on June 8, 2007, challenging the denial.
That new complaint was filed more than three years after the
plaintiff had been required to give written proof of his claim,
and was therefore outside the plan's limitations period if the
plan's accrual date were enforced.  The Court of Appeals was thus
directly faced with the question of whether an ERISA plan may not
only set the time for filing suit but may also specify the date
on which the claim would accrue.

In deciding that question in the affirmative, the court held
that the "clear repudiation" rule (which had been used by the
District Court, and which is the rule applied when the plan does
not define the accrual date, <u>see Morrison v. Marsh & McLennan</u>

Companies, 439 F.3d 295 (6th Cir. 2006)) did not apply when the plan itself specifies the accrual date. Thus, the district court erred by using the "clear repudiation" rule. Nevertheless, the court affirmed the dismissal of the case on limitations grounds, holding that the plan language clearly provided that suit had to be brought within three years of the latest date on which proof of claim was required to be given and that such a provision was enforceable. In Rice, such proof was due within 90 days of the end of the elimination period, which was 180 days long. Thus, the limitations period began to run 270 days after the alleged onset of disability. Because the complaint was filed more than three years after that date, it had to be dismissed.

Rice is binding on this Court, notwithstanding Unum's arguments that it may be inconsistent with earlier Sixth Circuit cases. Therefore, this Court must give effect to the language in the plan which defines the accrual date for Ms. White's §1132(a)(1)(B) claim unless there are valid reasons for not doing so.

e. Applying the Plan's Limitations Provision

In order to apply the limitations period contained in the plan, the Court must determine what the plan language means. As quoted above, the plan states that a three-year period is allowed for filing suit "unless otherwise provided under federal law." Ms. White's first argument is that this language automatically substitutes the applicable state statute of limitations for any contractual-based limitations period. In support of her position, she reasons that when federal courts borrow the most analogous state statute of limitations for ERISA claims, the state limitations period actually becomes "federal law." Thus, in Ms. White's view, the plan's reference to federal law is really a reference to the state statutes of limitations which federal law borrows and uses. Under this interpretation, because

Ohio law allows her fifteen years to file suit, so does the plan.

The Court does not find this argument persuasive. The Court is mindful that ambiguities in ERISA benefit plans are to be construed against the insurer and that the plain meaning of the plan language is to be followed. <u>Regents of Univ. of Michigan v. Employees of Agency Rent-A-Car Hosp. Ass'n</u>, 122 F.3d 336, 339-40 (6th Cir. 2006); <u>see also Morgan v. SKF USA, Inc.</u>, 385 F.3d 989,992 (6th Cir. 2004). That does not mean, however, that the Court has to adopt any possible construction of the plan language, no matter how unreasonable it might be. While the Court may be required to construe plan language in the insured's favor if it is susceptible to more than one meaning, "if reasonable interpretation favors the insurer and finding another interpretation would be strained, the court is not to torture or twist the language of the policy." <u>Sousa ex rel. Will of Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan</u>, 252 F.Supp. 2d 1046, 1056 (E.D. Cal. 2002), <u>citing Simkins v. NevadaCare, Inc.</u>, 2209 F.3d 729, 735 (9th Cir. 1990).

The phrase "federal law" is not typically interpreted to mean "state law," nor is that the plain meaning of that phrase. Further, if the language means what Ms. White says it means, there would have been no point in specifying a three-year limitations period in the plan. The plan may just as well have said that the state statute of limitations applies in every case. Construing somewhat different language, but using reasoning that is applicable here, the court in <u>Sousa ex rel. Will of Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan</u>, 252 F.Supp. 2d 1046, 1057 (E.D. Cal. 2002) observed that "if the Plan meant to adopt the statute of limitations provided by the state, the Plan would have either explicitly said so or not had any statute of limitations."

The Court's research has turned up at least one district

court decision accepting Ms. White's argument.  <u>See Warner v.</u>
<u>Unum Life Ins. Co. of America</u>, 2009 WL 73666 (E.D. Mo. 2009).
However, the reasoning of that case is not persuasive.  <u>Warner</u>
cited <u>Harris v. The Epoch Group, L.C.</u>, 357 F.3d 822 (8th Cir.
2004) in support of its holding, but <u>Harris</u> involved plan
language that provided that suit had to be filed within three
years "or such longer period as required by applicable state
law."  <u>Id</u>. at 824.  Even though state law is not strictly
applicable to ERISA actions, the court held that this was a plain
reference to the state statute of limitations and that if it were
not, the language in the plan would be mere surplusage.

To this Court, it seems unreasonable to give these two
different phrases - one of which specifically refers to state
law, and the other specifically to federal law - identical
meanings.  Further, <u>Warner</u> also concluded that the language
referring to federal law would be surplusage if it were not
deemed to be a reference to borrowed state law, but the
construction which this Court favors does not render it
meaningless or superfluous.  The most reasonable (and, in the
Court's view, the only reasonable) interpretation of such
language is that if Congress were to enact a limitations period
for ERISA benefits claims, or if the plan is being construed in a
circuit that does not permit the parties to shorten, by contract,
the state limitations period, the federal law passed by Congress
or adopted by the federal courts would control over the plan
language.  To date, Congress has not passed such a law, and in
this circuit an ERISA plan is permitted to prescribe a
limitations period which is shorter than Ohio's fifteen-year
statute.  Consequently, there is no federal law which would
operate to invalidate the limitations period in this plan when
suit has been filed by an Ohio participant.  Thus, the Court
must, if it can, give effect to the plan's three-year limit on

filing suit.

Before construing the plan language further, however, the Court will first address Unum's limitations argument, which, if it were accepted, would eliminate the need to dissect the plan's accrual provision. Although Unum clearly favors the Court's use of the plan's three-year limitations period, it does not offer much argument in support of the plan's accrual language. As the Court has explained above, the language of this particular plan says that the three-year period for filing suit begins to run within a certain number of days "after proof of claim is required." In fact, exactly like the plan involved in <u>Rice</u>, this plan provides that proof of claim is required no later than 90 days after the end of a 180-day elimination period. <u>Rice</u> would therefore appear to require this Court to hold that the limitations period began to run 270 days after Ms. White's disability began. If the Court so held, the statute of limitations would have run (absent any tolling events) on a date three years and 270 days after July 8, 2001, or roughly April 4, 2005. The Court would have to factor in the tolling effect of the reconsideration process, of course, and it would also have to address whether the accrual provision operates the same way in a termination of benefits case as it does in a case where the decision under issue is the initial denial of benefits, because only that latter situation is addressed in <u>Rice</u>. Before doing this, however, the Court must explain why it rejects Unum's alternative approach to the issue.

As noted above, Unum has not relied on the <u>Rice</u> rationale in support of its motion. Rather, it argues that this case is controlled by <u>Morrison v. Marsh & McLennan Companies</u>, 439 F.3d 295 (6th Cir. 2006). As the Court explained in its earlier discussion of <u>Rice</u>, <u>Morrison</u> determined the accrual date for the claim in that case using the "clear repudiation" rule, which

provides that the statute of limitations for an ERISA benefits
claim begins to run when the plan administrator clearly
repudiates the claim for benefits.  Unum urges the Court to apply
the clear repudiation rule here and to dismiss the case because,
even taking into account the time period when the reassessment
process was pending, the case was filed more than two months
late.

    For the following reasons, the Court does not believe it is
free to use Morrison's analysis here.  As the district court
decision in that case indicates, the plan language at issue there
was very different.  It provided that suit could be filed after a
claim for benefits was "denied or ignored, in whole or in part
...."  See Morrison v. Marsh & McLennan Companies, 326 F.Supp. 2d
833, 841 (E.D. Mich. 2004).  That language is entirely consistent
with the "clear repudiation" rule.  However, as Rice makes clear,
when the plan language is different, the Court must give effect
to that language rather than simply applying the "clear
repudiation" rule, and to do otherwise is error - the same error
that Rice found the district court to have committed in that
case.

    Unum does cite to other cases in support of its position.
However, Grasselino v. First Unum Life Ins. Co., 2008 WL 5416403
(D. N.J. December 22, 2008) is not only a non-binding case from
another district, but the parties did not litigate the question
of when the statute of limitations began; rather, they simply
disputed which of the defendant's actions constituted a final
decision on, or repudiation of, the benefits claim.  Ayoub v.
Unum Life Ins. Co. of America, 2007 WL 1059177 (E.D. Mich. April
6, 2007), also cited by Unum, actually supports the approach
mandated by Rice.  Like Rice and like this case, Ayoub involved
plan language which stated that "Legal action must be started
within three years after the written Proof of Loss is required to

be furnished" and which required that proof of loss "must be provided within 90 days after each month for which a benefit is payable." <u>See Ayoub</u>, 2007 WL 1059177, *3. The elimination period expired in December, 2000. Ninety days after that time was March, 2001. The court held that this language unambiguously provided that the limitations period began to run on that date and it expired in March, 2004, over two years before the complaint was filed. Consequently, this Court must do its best to give effect to the plan language in determining when Ms. White's claim accrued, and it cannot simply rely on the "clear repudiation" rule as Unum suggests.

As noted above, the plan language would seems to provide, as applied here, that the limitations period began to run on April 4, 2002 - 270 days after Ms. White's disability began - and would have expired, absent any tolling of the period, on April 4, 2005. Before applying the plan in this way, however, the Court must first address Ms. White's claim that, even if the Court rejects her argument that the language about federal law otherwise applying to the limitations period is simply a gateway to the Ohio statute of limitations, the plan language does not control the limitations question presented here. As she phrases this argument in her responsive memorandum (Doc. #40, at 5), "it is well established that language in a policy's statute of limitations provision alone is insufficient to inform an insured that the ... limitations period has been triggered. Moreover, Unum never required White to submit 'proof of claim' when it terminated her benefits." These two separate assertions will be discussed in reverse order.

In support of the second of these arguments, Ms. White contends that she never received a letter from Unum requesting that she submit a "proof of claim." Further, she asserts that the policy does not define what a "proof of claim" is, so that

she could not have known to what that phrase, as used in the limitations provision, referred.  Her memorandum declares that "no definition of the term can be found in the 'Glossary' section, nor anywhere else in the policy."  Doc. #40, at 8.

The Court does not agree with this latter assertion. Although the glossary section of the plan does not define "proof of claim," the language quoted above from the "CLAIM INFORMATION" section of the plan is sufficiently clear to notify plan participants that a "proof of claim" document exists, and what must go in it.  It also tells any applicant for benefits when it should be filed, and when it must be filed, using both the phrase "proof of your claim" (as in "WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM") and the exact phrase "proof of claim" (stating that the benefits applicant may be required to provide "additional medical and non-medical information as part of your proof of claim").  See UACL 00030.  A reasonable person would surely understand from this language what the plan meant by the phrase "proof of claim" when that phrase was repeated in the limitations provision.

Further, the Court of Appeals stated in Rice that such language was "plain" and constituted a sufficient basis for finding that a claimant who did not comply with it was barred from pursuing judicial relief.  See Rice, 578 F.3d at 456 ("the parties have not provided any reason to ignore the plain language of the contract, and ... we cannot find one ...").  Here, too, the Court cannot find any reason to ignore the plain language of this provision, or to find that it is not clear enough to be enforced, especially when it is read in conjunction with other language in the plan.  Nor does the Court agree that, at least as it relates to Ms. White's initial claim for benefits, Unum was required to send her a letter specifically asking for this proof of claim.  The plan itself requires it, and there is no

corresponding provision indicating that the requirement is somehow waived if Unum never sent a letter or other communication asking for it.

Ms. White's other argument appears to contain two related threads. Relying on four cases which construe similar plan language, and which also involved an action contesting the termination of benefits, she asserts that in this specific context, the plan language itself is insufficient to trigger the statute of limitations. Rather, in order for this limitations provision to be enforced against a participant whose benefits are being terminated, there must be a letter from the plan administrator specifically requiring that a proof of claim be submitted in connection with the termination proceedings. Additionally, the letter must use the actual language used in the plan's limitation provision or it cannot serve as the triggering event for the time to start to run. Because, in her view, Unum did not send her any such letter, she appears to argue that the three-year time period for commencing suit has not yet started to run. Although, if the Court were to accept this argument, it might therefore conclude that her claim has not yet accrued (and it is usually improper for the Court to consider the merits of a claim that has not accrued), Ms. White's conclusion is that her claim was timely filed. For the following reasons, the Court does not accept the reasons she has advanced for finding the plan's language inapplicable to her situation.

The first question posed by this argument is whether this particular limitations provision operates differently depending upon whether the court action which is filed challenges the initial denial of a claim for benefits, or challenges the termination of benefits which were previously awarded. The short answer to this question is that it may operate differently in those contexts, depending upon the outcome of applying the

provision to the facts of each case, but that it does not do so
here.

Certainly, one of the principles which guides the Court's
interpretation of contractual language governing the time for
filing suit is whether the application of that language leaves
the insured with a reasonable time within which to bring a court
action. That reasonable period of time must be measured by the
time when the prerequisite for filing suit, i.e. exhaustion of
administrative remedies, has occurred, especially when, as here,
the plan language expressly provides for an accrual date which is
earlier than the date on which such exhaustion may occur. See,
e.g., Salisbury v. Hartford Life and Acc. Co., 583 F.3d 1245,
1249 (10th Cir. 2009), where the court noted that, in order to
take into account both "the Plan's right to set a limitations
period and the claimant's need to exhaust administrative
remedies" the courts should afford the claimant "a reasonable
time after exhaustion of administrative remedies" to file suit.
Thus, if the Court were to apply the plan provision at issue here
as it is literally written and concludes that the written proof
of claim referred to in that provision was the one Ms. White had
to submit in connection with her initial claim for benefits, the
relevant question would be: Would this application of the plan
language allow Ms. White a reasonable amount of time to file suit
after her appeal of the termination of her benefits was finally
resolved? The answer to that question is clearly yes.

The Court has already performed this calculation. As noted
above, because the plan required Ms. White to provide proof of
claim within 90 days after the end of her elimination period, and
that date was April 4, 2002, she had, absent any tolling, until
April 4, 2005 to file suit. The letter resolving her appeal from
the decision discontinuing her benefits is dated October 7, 2003.
That means she had almost eighteen months from that date within

-25-

which to file suit.  Further, Unum concedes that the time from
January 23, 2005 through December 13, 2006 should be excluded
from the limitations period.  On January 23, 2005, there were
still 71 days left in the limitations period.  When the
reassessment process ended on December 13, 2006, Ms. White could
have filed suit within those remaining 71 days, or by February
22, 2007.  She did not.  The Court views these time frames as
reasonable, and because Mr. White did not avail herself of time
within which to file suit, her claim is barred.

The Court is not alone in reaching this conclusion.  In
Abena v. Metropolitan Life Ins. Co., 544 F.3d 880 (7th Cir.
2008), the court construed language almost identical to the
language in this plan which required the filing of proof of claim
not later than three months after the elimination period (which
in that case was 90 days).  The plaintiff filed his proof of
claim and was granted benefits.  Later, those benefits were
terminated.  He appealed that decision. The final denial was
rendered two years and five months after he submitted his initial
proof of claim.  He did not file suit in the ensuing seven
months.

In holding that the case was time-barred, the court noted
that the language in the plan concerning the accrual date of the
claim was better suited to cases where benefits were initially
denied than to cases where they had been granted and then
discontinued.  However, the court stated that "[a] poorly drafted
contract term is still a contract term" and that the court was
required to enforce it as long as it was reasonable.  Id. at 884.
The court agreed that, on a case-by-case basis, the enforcement
of such a provision could be deemed unreasonable, as, for
example, when benefits were paid for more than three years after
the proof of claim was filed and then discontinued, but the court
viewed that hypothetical situation irrelevant to its decision

because "that is not what happened here." Id. Concluding that both the initial three-year limitations period, and the seven months remaining in that period once the decision to terminate benefits, were reasonable, the court affirmed the dismissal of the case on limitations grounds. The facts of this case are virtually identical, and the Court, finding Abena's reasoning persuasive, chooses to follow it and similarly hold that Ms. White's case is time-barred because she did not file suit by February 22, 2007.

Neither party has cited Abena in the briefs filed here, so the Court is somewhat uncertain as to how Ms. White would attempt to distinguish it or argue that it should not be followed. She has, however, presented arguments about cases that are seemingly inconsistent with Abena, so the Court will examine each of these cases in order to determine if they provide a compelling reason to reach a different result.

Ms. White first cites to Mogck v. Unum Life Ins. Co. of America, 292 F.3d 1025 (9th Cir. 2002). As here, the key language from the limitations provision construed in Mogck provided that suit could not be filed "more than three years after the time proof of claim is required." Id. at 1028. In that case, Unum argues that the event which triggered the running of the limitations period was a letter advising the claimant that his benefits would be discontinued. Although the letter advised him that if he had new or additional information about his claim, he was free to submit it, it did not use the words "proof" or "proof of claim" to describe what could be submitted. The court held that if an insurer chooses to use words in a limitations provision that trigger the running of that period, those same words must appear in any communication which the insurer relies upon as having started the clock. Schneider v. Unum Life Ins. Co. of America, 2007 WL 543045 (D. Or. February 15, 2007)

-27-

involves very similar facts, and, of course, that district court was required to treat Mogck as controlling precedent.

There are several reasons why the Court finds these two cases either inapplicable or unpersuasive. Here, following Rice and Abena, the Court has concluded that the triggering event is not a letter but the requirement found in the plan itself concerning the submission of proof of claim. That language does, as set forth above, define both what a "proof of claim" consists of, and when it is required to be filed, in words that a reasonable person can understand. Therefore, the cases are distinguishable.

Further, even if the Court focused on the letters written by Unum concerning the continuation or termination of Ms. White's benefits, it finds language in those letters which is distinguishable from the language used in Mogck and Schneider. Unum sent Ms. White a letter dated December 2, 2002, which told her that "At this time, we need updated certification of your continued disability." She was asked to complete a medical supplemental statement on a form enclosed with the letter, and to do so by January 2, 2003. (UACL 00414). The plan's provisions on the page entitled "CLAIM INFORMATION," found at UACL 00030, allowed Unum to request information about continuing disability, and says that this "proof" must be received within thirty days of the request. That language, in turn, is found under the heading "WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM." Consequently, the December 2, 2002 letter does use the same word ("proof") as the plan, and it is clearly the type of request for additional proof of claim that is referred to in the "proof of claim" section of the plan. This letter would therefore appear to comply with the principle announced in Mogck. Even if it did not, this Court believes that a letter from the plan administrator that puts a claimant on fair notice that proof of

claim is being required under the plan, even if it is worded
somewhat differently, is enough to trigger the running of the
limitations period.

Additionally, some courts have held that, in a termination
of benefits case, it is the sending of a letter requiring proof
of continuing disability that starts the limitations period
running rather than the date by which the initial proof of claim
was required to be given.  See, e.g., Burke v.
PriceWaterHouseCoopers LLP Long-Term Disability Plan, 572 F.3d 76
(2d Cir. 2009).  Even if the Court were to adopt this reasoning
and find that the December 2, 2002 letter was the operative event
for limitations purposes, that would not assist Ms. White.  Under
this scenario, Ms. White would have had three years and thirty
days after the issuance of that letter to file her claim.  That
produces a filing date of January 2, 2006, absent any tolling.
Applying the same tolling period which the Court has previously
used in its calculations, the reassessment period tolled the
running of the limitations period from January 23, 2005, to
December 13, 2006.  Ms. White had roughly 344 days left to file
suit on January 23, 2005.  Adding that time after December 13,
2006 yields a new date to file of November 22, 2007.  Again, this
case was filed almost a year after that, so it is untimely under
this calculation as well.

Ms. White also relies on Schoettler v. Wachovia
Corp./Wachovia Corp. Long-Term Disability Plan, 2008 WL 5101367
(E.D. Cal. 2008), in support of her position.  Like Schnieide,
this decision relied in part on Mogck, so to that extent it is
distinguishable or inapplicable.  However, it also set forth an
additional reason why it found that the limitations period had
not been triggered.  There, the letter that supposedly started
the limitations period running by asking for additional
information used permissive language ("may") which, according to

the court, could not reasonably be construed as requiring a proof of claim.  Since the limitations provision in that plan began only when proof of claim was required, and not simply when it would be accepted, the letter was insufficient.  Again, in Ms. White's case, the December 2, 2002 letter did not state that she "may" submit proof of continuing disability, but that she "must." This fact also distinguishes this case from Schoettler.

Finally, in Skipper v. Claims Services Int'l, 213 F.Supp. 2d 4 (D. Mass. 2002), the other case upon which Ms. White relies, the court, in addition to citing to Mogck, noted that the only proof of loss which the insurer had ever requested was the one upon which benefits had originally been granted.  If the court had tied the limitations period to that event, it would have meant that the plaintiff's claim became time-barred while he was still receiving benefits and before he ever became aware that they would be discontinued.  As the Abena court noted, "it would be unreasonable to enforce a limitations period that ended before the claim could have even accrued," id. at 884, and this Court agrees.  However, as Abena also points out, "that is not what happened here."  Id.  Skipper does present that situation, but because Ms. White's case is different, Skipper is simply inapplicable.  For all of these reasons, the Court concludes that the plan's limitations period was triggered either by its own provisions requiring the submission of proof of claim within 90 days of the end of the elimination period, or by the December 2, 2002 letter.  Either way, this case was not filed within three years thereafter, and is time-barred.

The Court adds a few final notes.  First, even if the Court were to hold, contrary to Rice, that the plan was not permitted to set the accrual date for Ms. White's benefits claim, that would not necessarily mean that she would get the benefit of Ohio's fifteen-year statute of limitations.  Rather, it is likely

that the Court would simply use the default method for determining the accrual date - which is the "clear repudiation" rule - but still apply the plan's three-year limitations period. See Furleigh v. Allied Group, Inc., 281 F.Supp. 2d 952, 970 (N.D. Iowa 2003) (where the accrual date is determined by federal law and not by the plan, "the next step is to apply the contractual limitations period to this accrual date"); cf. White v. Sun Life Assur. Co. of Canada, 488 F.3d 240 (4th Cir. 2007).  Using October 7, 2003 as the accrual date, this case was still filed too late.

Second, the Court concludes that it is extremely unlikely that Ms. White's claim has not yet accrued.  If it did not accrue under the plan's accrual provision, it certainly accrued by the date her claim was finally denied.  Again, it would be the least reasonable reading of the plan to find that if the accrual of the claim had not occurred pursuant to the plan's provisions, but instead accrued in a different manner, that somehow rendered the three-year limitations period inapplicable.

Whatever else may be said about this plan, it contains a three-year limitations period.  It was reasonable for Unum to expect that a claimant who was dissatisfied with a decision made pursuant to the plan would appreciate the fact that suit had to be filed within three years of some date - whether it was a date determined with reference to the date on which proof of claim was originally required, or to the date on which subsequent proof of claim was requested, or, if neither of these applied, the date on which the claim was finally denied.  This case was not filed within three years, plus any time added for tolling, of any of those dates.  Therefore, the §1132(a)(1)(B) claim is time-barred.

III.  The Breach of Fiduciary Duty Claim

In her motion for judgment on the administrative record, Ms. White also seeks relief under 29 U.S.C. §1132(a)(3) for alleged

breaches of fiduciary duty.  That section of ERISA has been
described as a "catch-all" section designed to allow plan
beneficiaries to seek relief for violations of the
administrator's duties under the plan which would not be
addressed simply by an award of benefits under §1132(a)(1)(B).
See, e.g., Gore v. El Paso Energy Corp. Long Term Disability
Plan, 477 F.3d 833, 842 (6th Cir. 2007) (allowing a claimant for
benefits to assert a separate cause of action under §1132(a)(3)
if the "claim ... could not have been characterized as a denial
of benefits claim"); Hill v. Blue Cross and Blue Shield of Mich.,
409 F.3d 710, 718 (6th Cir. 2005) (allowing such a claim where
"[o]nly injunctive relief of the type available under §1132(a)(3)
will provide the complete relief sought by the Plaintiff[] ...").
Ms. White's memorandum identifies three separate breaches of
Unum's duties under the plan: (1) denying benefits based on
statements allegedly made by Dr. Katz which do not appear in the
record and withholding the opinion of Ms. White's treating doctor
from the physician reviewer; (2) not maintaining a complete
administrative record; and (3) compiling the record in a
disorganized fashion.  For the following reasons, the Court
concludes that she is not entitled to any relief on this claim.

    Unum argues in its responsive memorandum that all of these
claims are simply "repackaged" versions of Ms. White's claim for
benefits.  Although recognizing that Gore and Hill allow a plan
participant to assert claims under both §1132(a)(1)(B) and
§1132(a)(3) under certain circumstances, Unum claims that those
circumstances are not present here.  If that is so, these claims
cannot be maintained independently from Ms. White's claim for
benefits.  See Wilkins v. Baptist Healthcare System, Inc., 150
F.3d 609, 615 (6th Cir. 1998) ("Because § 1132(a)(1)(B) provides
a remedy for Wilkins's alleged injury that allows him to bring a
lawsuit to challenge the Plan Administrator's denial of benefits

to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to §1132(a)(3)"). Alternatively, Unum asserts that the claims are not supported by the record. There is some merit in each of these defenses.

Ms. White's first breach of fiduciary duty claim deals exclusively with the way in which her benefits claim was reviewed and decided. She asserts that Unum breached duties with respect to the way in which it provided information to the reviewing physician or documented conversations with other treating sources. To a large extent, this is simply a reiteration of her argument that the denial of her claim was arbitrary and capricious, and that is the essence of her claim under §1132(a)(1)(B). Therefore, this claim cannot be pursued separately under §1132(a)(3).

The same is not necessarily true for Ms. White's other two claims. Even if she had been awarded benefits, the issues she has raised about the way in which the record was compiled and organized in her case would not be addressed specifically. Further, the possibility that a favorable ruling on her benefits claim would moot her claim for breach of fiduciary duty does not mean that the latter claim is foreclosed by the former. See Gore, 477 F.3d at 841 ("That [the claimant]'s 'own occupation' injury would be rendered moot if remedied by the 'any occupation' determination does not mean that the Plaintiff's alleged injury is 'a repackaged denial of benefits claim'"). Certainly, her claims differ from the type of system-wide plan administration issues that were involved in cases like Hill and Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410 (6th Cir. 1998), but the Court is not inclined to dismiss them for that reason. Rather, they are subject to dismissal because, as Unum points out, they have no support in the record.

Ms. White contends that the administrative record is missing certain documents, including what she describes as a "roundtable discussion file," and certain medical records from Drs. Benes and McHugh. Unum points out that the documents to which Ms. White cites for the proposition that there was a "roundtable discussion file" show nothing more than that there was a roundtable discussion. That is an accurate statement. Because the administrative record does not prove that there is such a document, and because Ms. White did not submit any other evidence showing its existence, this claim is simply unsupported. Unum also points out that there are records in the file which discuss the medical treatment Ms. White received from both Dr. Benes and Dr. McHugh. That statement is accurate as well. There is no evidence that other records from these physicians were reviewed but not included in the file. Thus, this claim is also unsubstantiated.

Finally, Ms. White asserts that Unum breached a fiduciary duty by failing to maintain an orderly administrative record and by producing it in a disorderly and disorganized fashion. The deficiencies she identifies are the inclusion of multiple copies of most of the documents, the non-sequential Bates stamping of the documents, the inclusion of many documents of little consequence (such as fax cover letters and mailing envelopes), and the inclusion of one document relating to someone else's claim. She also cites to <u>Crider v. Highmark Life Ins. Co.</u>, 458 F.Supp.2d 487 (W.D. Mich. 2006) for the proposition that a remand for further action is required when the administrative record is produced and maintained in such a fashion.

Certainly, the record here could have been better organized, and both duplicate copies and irrelevant material could have been culled out at some point, but the pre-filing exchange of the administrative record allowed both parties to review it for

accuracy, completeness, and organization, and to suggest remedies for any deficiencies. Also, if the file actually used to determine Ms. White's benefits claim contained duplicate copies and material such as fax cover letters and envelopes, Unum was required to produce them. In the future, the Court may adopt requirements about the organization, content, and indexing of such records in order to facilitate judicial review, but it did not do so here, and its review of this case has not been materially hampered by the way in which the record was produced and filed.

Further, the Court notes that in <u>Crider</u>, the court determined that the administrative decision was unsupportable and awarded benefits on that basis. Although, in the opinion awarding benefits, the court commented on the disorganized nature of the record, <u>see</u> 458 F.Supp.2d at 490 n.1, that was not the basis for the relief which was ordered. The language quoted in Ms. White's brief comes from the court's separate order denying the defendants' motion for reconsideration, and the court's remarks were made after it became apparent that the defendants had intentionally withheld relevant documents from the record when it was initially filed. The court did state that a litigant who "apparently wilfully withheld on the assumption that the evidence it did present would be sufficient" was not entitled to reconsideration when its assumption proved unfounded, <u>see id</u>. at 518, but this case does not involve either a showing that evidence was wilfully withheld or a request by any party for reconsideration on the basis of such evidence. Consequently, there is nothing about the state of the record to suggest either that Unum breached a fiduciary duty which it owed to Ms. White or that she is entitled to any relief on this claim.

IV. <u>The Motion to Seal</u>

On April 27, 2009, Unum moved to file the administrative

-35-

record under seal, and the record was filed in that fashion
pending a decision on the motion.  In response, Ms. White
requested only that any identifying information be redacted in
accordance with Local Civil Rule 26.2(a).  For the following
reasons, Unum's motion will be denied.

United States courts have been presumptively open to access
by the public.  Brown & Williamson Tobacco Corp. v. F.T.C., 710
F.2d 1165, 1178-79 (6th Cir. 1983).  Trial courts have
supervisory power over their records and files, which includes
sealing them when interests of privacy outweigh the public's
right of access to the information.  In re Knoxville
News-Sentinel Co., 723 F.2d 470, 474 (6th Cir. 1983) (citing
Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978)).
However, this power is limited by Rule 26(c)(1) of the Federal
Rules of Civil Procedure, which requires "good cause" for filing
information under seal.  See Procter & Gamble Co. v. Bankers
Trust Co., 78 F.3d 219 (6th Cir. 1996).

This Court does not believe there is good cause for sealing
the administrative record in this case.  First, to the extent
that the Court has relied on portions of it in making its
decision, the public's entitlement to view court documents upon
which a court's decision rests ordinarily outweighs any privacy
interest in such records.  See, e.g., Ross v. Abercrombie & Fitch
Co., 2009 WL 3855497, *2 (S.D. Ohio November 16, 2009), citing
United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995).
Second, many types of cases involve the public disclosure of
medical conditions and medical records.  That is typical in
personal injury litigation, employment litigation, and for
certain types of administrative reviews such as cases originating
with the Social Security Administration or the Benefits Review
Board.  The plaintiff who seeks such redress ordinarily
understands that in order to do so, he or she may be waiving the

right to keep his or her medical history out of the public domain, and Ms. White's opposing memorandum acknowledges that she appreciates this eventuality. Certainly, there may be some cases where either the filing or redaction of medical records, or allowing the plaintiff to proceed under a pseudonym, is appropriate because of the peculiarly sensitive or stigmatizing nature of the underlying medical condition. See, e.g. Doe v. Salvation Army, 531 F.3d 355, 356 (6th Cir. 2008) (plaintiff allowed to proceed under a pseudonym because he suffered from paranoid schizophrenia). This case does not appear to fall into that category. Finally, because several of Ms. White's claims implicate the administrative record as a whole (such as her assertions that its contents or organization violated Unum's fiduciary duties), it can fairly be said that the Court has relied on the entire record in making this decision. For all of these reasons, Unum's motion for leave to file the administrative record under seal (#16) will be denied, and Unum will be required to provide the Court with an appropriately-redacted version of the record for public filing within fourteen days of the date of this order.

## V. Disposition and Order

For the foregoing reasons, defendants' motion for leave to file the administrative record under seal (#16) is denied. Within fourteen days, Unum shall file the administrative record, not under seal, with only those redactions permitted by the Court's Local Civil Rules. Defendants' motion to dismiss Count III of the amended complaint (#28) is granted. Defendants' motion for judgment on the administrative record (#36) is granted and plaintiff's motion for judgment on the administrative record (#37) is denied. This case is dismissed with prejudice. The Clerk shall enter judgment in favor of the defendants and terminate this case.

/s/ Terence P. Kemp
United States Magistrate Judge